IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JASON STRICKLAND, #2180409,      §
                Petitioner,      §
                          §
v.                            §     No. 3:20-cv-3260-L (BT)
                          §
DIRECTOR, TDCJ-CID,      §
                Respondent.      §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Jason Strickland, a Texas prisoner, filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge for findings and a recommendation pursuant to 28 U.S.C. 636(b) and a standing order of reference. For the following reasons, the Court should DENY Strickland's petition.

**Background**

A jury found Strickland guilty of child sex trafficking and child sexual assault, *Strickland v. State,* Nos. 05-18-00170-CR, 05-18-00171-CR, and the state trial court sentenced him to life imprisonment in each cause. *See* ECF No. 10-7 at 399; ECF No. 10-9 at 324. The Texas Fifth Court of Appeals affirmed Strickland's convictions and life sentences. *See Strickland v. State,* 2019 WL 2402983 (Tex. App—Dallas 2019, no pet.). He did not file a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals (CCA). *See* ECF No. 2 at 2-3. He did, however, file state habeas applications challenging his convictions. ECF No. 2

1

at 3. The CCA denied both applications without written order. ECF No. 10-23 at 1; ECF No. 10-25 at 1; *Ex parte Strickland*, WR-91,596-01,02 (Tex. Crim. App. Oct. 14, 2020).

Strickland then filed his federal habeas petition, in which he argues:

1. Article 38.37 of the Texas Code of Criminal Procedure (Article 38.37) is unconstitutional under the Due Process Clause;

2. The Texas Trafficking Statute, Texas Penal Code Section 20A.02, *et seq*., is facially unconstitutional for being overbroad and vague; and

3. His appellate counsel rendered ineffective assistance by failing to argue that the Texas Trafficking Statute is overbroad and vague.

ECF No. 2 at 6-9; ECF No. 3. The State filed a response. ECF No. 13. Strickland did not file a reply.

## Legal Standards and Analysis

The CCA denied Strickland's claims on the merits. *See*, *e.g.*, *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim.") (citing *Ex parte Torres*, 943 S.W.2d 469 (Tex. Crim. App. 1997)). Therefore, this Court reviews those claims pursuant to 28 U.S.C. § 2254(d), which provides:

(d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). Absent express factual findings, a federal court may imply fact findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the

state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has affirmed that this is a difficult standard to meet, and "it was meant to be" so. *Id.* at 102. Even if "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

1. *Teague* prohibits Strickland's claim that Article 38.37 is unconstitutional, or, alternatively, the CCA's rejection of the claim did not violate clearly established law.

In this case, the State, pursuant to Article 38.37 of the Texas Code of Criminal Procedure, introduced evidence that Strickland was previously convicted of multiple counts of rape in Oklahoma. *See*, *e.g.*, *Belcher v. State*, 474 S.W.3d 840, 846 (Tex. App.—Tyler 2015, no pet.) ("Article 38.37 as amended now provides for the admission of evidence of other sex crimes committed by the defendant against children other than the victim of the alleged offense 'for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.'") (citing TEX. CODE CRIM. PROC. art. 38.37 § 2(b)).

Strickland argues that Article 38.37 is unconstitutional because the use of propensity or character-conforming evidence violates the Due Process Clause. *See* ECF No. 3 at 7, 10-15. The State counters that *Teague v. Lane*, 489 U.S. 288 (1989) prohibits this claim, or, alternatively, that the CCA's rejection of the claim was not

contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court.

In *Teague*, the Supreme Court held:

> That federal courts may not create new constitutional rules of criminal procedure on habeas review. A new rule is one which was not "dictated by precedent existing at the time the petitioner's conviction became final." 489 U.S. at 301, 109 S. Ct. 1060. A new rule is created if the rule is, "in light of this Court's precedent, 'susceptible to debate among reasonable minds.'" *O'Dell v. Netherland*, 521 U.S. 151, --, 117 S. Ct. 1969, 1974, 138 L.Ed.2d 351 (1997) (quoting *Butler v. McKellar*, 494 U.S. 407, 415, 100 S. Ct. 1212, 108 L.Ed.2d 347 (1990)). Accordingly, we must examine existing precedent and determine whether, under that precedent, relief is required. If reasonable minds could differ on whether current law requires relief, we may not grant relief without creating a "new rule" barred by *Teague*.

*Vega v. Johnson*, 149 F.3d 354, 357 (5th Cir. 1998).

*Teague* does not, however, bar new substantive rules. *See Montgomery v. Louisiana*, 577 U.S. 190, 200 (2016). "A rule is substantive rather than procedural if it alters the range of conduct or class of persons that the law punishes"; "[t]his includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schiro v. Summerlin*, 542 U.S. 348, 351-53 (2004). "Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating 'the manner of determining the defendant's culpability.'" *Montgomery*, 577 U.S. at 201 (emphasis in original) (quoting *Schiro*, 542 U.S. at 353).

Here, because the rule that Strickland proposes—that the admission of prior sexual offense evidence (or propensity evidence in general) violates the Due Process Clause—is designed to regulate the manner of determining a defendant's guilt, it is procedural. Further, the proposed rule would be new because it is not "dictated by precedent existing at the time the defendant's conviction became final." *Felder v. Johnson*, 180 F.3d 206, 210 (5th Cir. 1999) (citing *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)). To the contrary, "the United States Supreme Court has expressly declined to decide whether the introduction of evidence of prior bad acts to show propensity to commit a crime violates due process." *Groen v. Busby*, 886 F.Supp.2d 1150, 1159 (C.D. Cal. 2012) (holding that *Teague* precluded a Due Process Clause challenge to California's version of Article 38.37) (citing *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.") (*Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) ("The Supreme Court has expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process.")).

It does not appear that the Fifth Circuit has addressed whether the admission of propensity or character evidence can violate the Due Process Clause; nor has Strickland pointed to any such authority. Although on the one hand he admits that "[a]t present, there is no direct guidance from the Supreme Court on

6

this issue," he also argues that Supreme Court cases show that it would find Article 38.37 unconstitutional if presented with the issue. ECF No. 3 at 12-14. But the cases he relies upon are inapposite. *Boyd v. United States*, 142 U.S. 450 (1892), held that it was error to admit evidence of uncharged robberies to prove a murder charge, but it did not mention or establish any constitutional rule. *See Shepard v. Tampkins*, 2015 WL 5559879, at *4 (C.D. Cal. July 28, 2015), *rec. adopted*, 2015 WL 5554000 (C.D. Cal. Sept. 21, 2015) (finding that *Boyd* "falls far short of establishing any clearly established constitutional rule applicable in a Section 2254 proceeding"); *see also Spencer v. State of Tex.*, 385 U.S. 554, 572-74 n. 4 (1967) (Warren, J. concurring) (citing *Boyd* as an example of a Supreme Court "decision[] exercising supervisory power over criminal trials in federal courts" which "suggest[s] that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause" even though "this Court has never held that the use of prior convictions to show nothing more than a disposition to commit crime would violate the Due Process Clause of the Fourteenth Amendment").

Strickland further argues that *Brinegar v. United States*, 338 U.S. 160, 174 (1949) "appears to be directly on point from the Supreme Court." ECF No. 3 at 14. But *Brinegar* only observed that the rules of evidence, including a general prohibition against evidence of prior crimes, are historically grounded, "embodied to some extent" in the Constitution, and developed to protect against "dubious and unjust convictions." *Brinegar*, 338 U.S. at 174. It did not put the issue of propensity

evidence and its constitutional ramifications beyond debate, especially when, as noted, the Supreme Court has more recently confirmed that it has not decided the issue.

In sum, Strickland asks the Court to apply a new constitutional rule of criminal procedure on collateral review, and *Teague* generally forbids that.

But even if *Teague* were inapplicable, Strickland's challenge to Article 38.37 would fail because Strickland fails to show that the CCA's rejection of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d). Again, there is "no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Parks v. Shaw*, 2021 WL 5856805, at *5 (S.D Miss. Mar. 30, 2021), *rec. adopted* 2021 WL 4705283 (S.D. Miss. Oct 8, 2021); *Estelle*, 502 U.S. at 75, n.5

Thus, because *Teague* bars it, or, alternatively, because the CCA's rejection of it was not contrary to or an unreasonable application of clearly established federal law as determined the Supreme Court, Strickland is not entitled to federal habeas relief on his claim that Article 38.37 is unconstitutional.

2.  Strickland's overbreadth and vagueness challenges are meritless.

Next, Strickland argues that the Texas Trafficking Statute, or least the portion of it pursuant to which he was convicted, is overbroad under the First

Amendment and unconstitutionally vague under the Due Process Clause. As explained below, these claims lack merit.

### a. Overbreadth

Although Strickland does not argue that the Texas Trafficking Statute violated *his* First Amendment right to free speech, he argues that the statute is overbroad because it could, in theory, chill some protected speech of others not before the court. *See* ECF No. 2 at 7; ECF No. 3 at 17.

The overbreadth doctrine allows litigants to "challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected rights or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Under "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008) (citing *Virginia v. Hicks*, 539 U.S. 113, 119-120 (2003)). The challenger bears the burden of demonstrating, "from the text of [the law] and from actual fact," that substantial overbreadth exists. *Hicks*, 539 U.S. at 122. "[T]he first step in overbreadth analysis is to construe the challenged statute," and the second step is to determine whether, as the Court construes the statute, it "criminalizes a substantial amount of protected expressive activity." *Id.* at 297. "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the Supreme Court has long "recognized

that the overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick*, 413 U.S. at 613). To account for the "disfavored" status afforded such facial challenges, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008), courts must "vigorously enforce[] the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep," *Williams*, 553 U.S. at 292 (emphasis in original).

Strickland fails to meet this demanding standard. First, contrary to Strickland's construction, the Texas Trafficking Statute includes a *mens rea* component. Under Section 20A.02(a)(7) of the Texas Penal Code:

> A person commits an offense if the person knowingly:

> (7) traffics a child and by any means causes the trafficked child to engage in, or become the victim of, conduct prohibited by [various penal code provisions, including, for example, Sections 21.011 and 22.011, which prohibit sexual assault and aggravated sexual assault respectively].

"Traffic" is a defined term that means "to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." TEX. PEN CODE § 20A.01(4).

According to Strickland, because the statute "does not take into account the intent of the individual," it is overbroad because it could, hypothetically, penalize benign speech—specifically in the form of recruitment or enticement—that is the but-for cause of a "trafficked" individual engaging in or becoming the victim of

prohibited conduct.  *See* ECF No. 3 at 21-25. For example, Strickland says that the statute would technically apply in the following hypotheticals:

- An adult, trying to do a good deed, "entices" an abused minor to live with him or her as opposed to on the streets or with the abuser.  While walking to the adult's home, the minor is raped by another person.

- A youth pastor "recruits" and "entices" students to come to teenage church events. A minor leaves home to attend the event and, either before, during, or after, the event, is sexually assaulted by another person.

- After an adult pays a minor a benign compliment, which could be construed as "enticing" or "recruiting," the minor decides to "just show up" at the adult's house but is raped on the way there by another person.

- An adult discovers that a minor in his or her child's class is not being cared for by his or her parents. The minor accepts an offer from the adult to live at the adult's home and then, months later, on a family vacation, the minor is sexually assaulted by another person.

ECF No. 3 at 23-25. The point of these examples is evident: without some type of *mens rea* requirement, protected speech[1] might technically violate the statute if it is the but-for cause of a child engaging in or becoming the victim of prohibited conduct.

As noted, however, the statute includes a *mens rea* requirement. It only applies if the defendant "knowingly . . . traffics a child and by any means causes the trafficked child to engage in, or become the victim of," prohibited conduct. "This is

---

[1] For purposes of its analysis, the Court assumes that these examples involve protected speech, although Strickland never cites any authority for that proposition.

not a case where grammar or structure enables the challenged provision or some of its parts to be read apart from the 'knowingly' requirement"; thus, "knowingly" modifies subsection seven of the Texas Trafficking Statute in its entirety, not just the part about "trafficking" a child. *See*, *e.g.*, *Williams*, 553 U.S. at 394; *see also Flores-Figueroa v. U.S.*, 556 U.S. 646, 652 (2009) ("That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element.") (citing *U.S. v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994) (Stevens, J., concurring)).

In *Liparota v. United States*, 471 U.S. 419 (1985), for example, the Supreme Court interpreted a federal food stamp statute that said, "'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [law]'" is subject to imprisonment. *Id.* at 420, n.1. "The question was whether the word 'knowingly' applied to the phrase 'in any manner not authorized by [law].'" *Flores-Figueroa*, 556 U.S. at 652 (citing *Liparota*, 471 U.S. at 423). And the Supreme Court held that it did. *Liparota*, 471 U.S. at 433; *see also Williams*, 553 U.S. at 294 (finding that "knowingly" applied to every element of challenged provision in criminal statute because it was not a case "where grammar or structure" enabled the challenged provision or some parts of it to be read apart from the "knowingly" requirement).

Like the statutes in *Williams* and *Liparota*, in Section 20A.02(a)(7) of the Texas Trafficking Statute, "'knowingly introduces the challenged provision itself, making clear that it applies to that provision in its entirety; and there is no

grammatical barrier to reading it that way." *Williams*, 553 U.S. at 294. Thus, to violate Section 20A.02(a)(7), the defendant must knowingly "traffic" a child and knowingly cause, by any means, the trafficked child to engage in, or become the victim of certain statutorily proscribed conduct. And under Texas criminal law, "[a] person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Cole v. State*, 46 S.W.3d 427, 431 (Tex. App.—Fort Worth 2001, pet. ref'd) (citing TEX. PENAL CODE §6.03(b)).

Turning to the second step of the analysis, Strickland fails to show that the statute encompasses a substantial amount of protected activity. None of the examples that he presents in his brief would fall under the Texas Trafficking Statute as the Court interprets it because in none of those examples is the would-be defendant *knowingly* "by any means caus[ing] the trafficked child to engage in or become the victim of" prohibited conduct. Indeed, it is difficult to imagine any scenarios in which the statute, as the Court construes it, would chill protected speech. Any recruiting or enticement that has the goal of causing the child to take part in or become the victim of prohibited conduct would not be protected because speech integral to criminal conduct is not protected. *See*, *e.g.*, *United States v. Stevens*, 559 U.S. 460 (2010) (noting that certain categories of speech, including speech integral to criminal conduct, have "never been thought to raise any constitutional problem") (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).

But even if the Court's construction of the statute is incorrect and it could operate like Strickland suggests, he still fails to show that any overbreadth would be substantial in relation to the statute's legitimate sweep. Again, the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*" in both absolute and relative terms. *Williams*, 553 U.S. at 292. Even if a fair amount of constitutional speech is implicated, courts will not invalidate a statute unless a significant imbalance exists:

> [T]here comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects "legitimate...interests in maintaining comprehensive controls over harmful constitutionally unprotected conduct." For there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally protected speech, or especially constitutionally unprotected conduct.

*Hicks*, 539 U.S. at 119 (citation omitted) (quoting *Broadrick*, 413 U.S. at 615); *see also Williams*, 553 U.S. at 292 ("[I]nvalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects.").

A challenger "'must demonstrate from the text of the statute and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally.'" *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012) (quoting *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 627 (6th Cir. 2010)). And further, when evaluating instances in which the statute could, hypothetically, infringe on the free speech rights of parties not before the court,

"[s]ome sensitivity to reality is needed; an invalid application that is far-fetched does not deserve as much weigh as one that is probable." *Magill v. Lynch*, 560 F.2d 22, 30 (1st Cir. 1977).

Here, Strickland fails to engage in any analysis of how his hypotheticals—which are based on conjecture, mostly far-fetched, and deserving of little (if any) weight in the analysis—measure against the statute's legitimate sweep. *See*, *e.g.*, *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 226 (3rd Cir. 2004) (rejecting overbreadth challenge when some of the scenarios advanced by the party seeking to overturn a directive on overbreadth grounds were "more than slightly unrealistic"); *Vermont Right to Life Committee, Inc. v. Sorrell*, 875 F.Supp.2d 376, 392 (D. Vt. 2012) ("Still, the plaintiff's mere conjecture as to hypothetical cases in which the law could be applied unconstitutionally is not enough.") (citing *Williams,* 553 U.S. at 303). That is, these speculative hypotheticals fail to show a significant, much less substantial burden on speech sufficient to justify the harmful effects that would flow from invalidating the Texas Trafficking Statute.

In sum, Strickland fails to show that the Texas Trafficking Statute is overbroad, or, at the least, he fails to show that the CCA's rejection of the overbreadth claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.[2]

---

[2] Much of Strickland's brief focuses on whether the Texas Trafficking Statute is a content-based restriction on speech that is subject to strict scrutiny. *See* ECF No.

b. Vagueness

Strickland argues that the Texas Trafficking Statute's use of the words or phrases "entice," "recruit," and "by any means" makes it unconstitutionally vague. ECF No. 21 at 27. "'The void-for-vagueness doctrine reflects the principle that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Roberts v. Jaycees*, 468 U.S. 609, 629 (1984) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)). "The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, and permits meaningful judicial review." *Id.* (citations omitted).

Generally, to be unconstitutionally vague, a statute must be "impermissibly vague in all its applications," including in its application to the party bringing the vagueness challenge. *Village of Hoffman Estate v. Flipside, Hoffman Estates, Inc.*,

---

3 at 17-23. That type of analysis, however, is not appropriate when the petitioner brings an overbreadth challenge as Strickland does here. *See*, *e.g.*, *United States v. Ho Ka Yung*, 2018 WL 619585, at *2, n.2 (D. Del. Jan. 30, 2018), *affirmed by United States v. Yung*, 37 F.4th 70 (3rd Cir. 2022) (noting that "[s]trict scrutiny applies when a law is found to be a content-based restriction on speech; it is not a subpart of the test applied to an overbreadth challenge") (citing *Stevens*, 559 U.S. at 467); *but see Peck v. McCann*, 525 F.Supp.3d 1316, 1337) (D. Colo. 2021) (noting that "the Supreme Court has not provided clear guidance on when and how scrutiny versus overbreadth should apply" and collecting cases).

455 U.S. 489, 495 (1982); *Roark & Hardee v. City of Austin*, 522 F.3d 533, 546-47, 551 n. 19 (5th Cir. 2008). And when considering whether a statute is vague in all its applications, "a reviewing court should examine the complainant's conduct *before* analyzing other hypothetical applications of the law because a [party] who engages in some conduct that is *clearly* proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Roark & Hardee*, 522 F.3d at 546 (quoting *Hoffman*, 455 U.S. at 497) (quotation marks and alterations omitted). "When constitutionally protected conduct is not threatened and 'at least some of [the defendant's] conduct is clearly proscribed' by the statute under review, it cannot be void for vagueness." *United States v. Clark*, 582 F.3d 607, 613 (5th Cir. 2009) (quoting *Roark & Hardee*, 522 F.3d at 547).

Here, Strickland does not argue that the Texas Trafficking Statute is vague as applied to him. In fact, he concedes that "his conduct, as applied in this case, could fall within the statute's prohibitions . . . ." ECF No. 3 at 28. Indeed, the evidence, which Strickland does not contest here, shows that he "trafficked" a child and caused the child to engage in prohibited conduct. *See Strickland*, 2019 WL 2402983, at *1-3 (setting forth background facts of case). Ordinarily, that would defeat Strickland's vagueness challenge. *See United States v. KT Burgee*, 988 F.3d 1054, 1060 (8th Cir. 2021) ("When reviewing for vagueness, we first determine if a statute is vague as applied to the defendant's conduct, and only if it is will we consider whether a statute is facially unconstitutional . . . [t]hus, if 'the statute gave adequate warning, under [the defendant's] specific set of facts, that the defendant's

behavior was a criminal offense,' then the statute is not vague.") (citations omitted).

But Strickland argues that he need not show the statute was vague in relation to his conduct because "First Amendment considerations are involved." ECF No. 3 at 28. It is true that, in the context of the First Amendment, "the ordinance need not be vague in all applications if it reaches a substantial amount of constitutionally protected conduct." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n. 8 (1983)). To determine whether a law, rule, or ordinance reaches a substantial amount of protected conduct, the relevant inquiry is whether it "clearly implicates free speech rights." *Diamond S.J. Enter., Inc. v. City of San Jose*, 430 F.Supp.3d 637, 645 (N.D. Cal. 2019) (quoting *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001)). A law clearly implicates free speech rights when "its chilling effect on constitutionally protected conduct is 'both real and substantial.'" *Sibley v. Watches*, 501 F.Supp.3d 210, 227 (W.D.N.Y. 2020) (quoting *Farrell v. Burke*, 449 F.3d 470, 496 (2d Cir. 2006)).

Here, for the same reasons discussed above in relation to the overbreadth analysis, Strickland fails to show that the Texas Trafficking Statute has a chilling effect on protected speech that is both real and substantial. Therefore, he is not able to rely on examples of how the statute might affect others to establish vagueness, and, because he does not argue or show that the statute was vague as applied to him, his vagueness claim lacks merit.

18

In sum, Strickland's vagueness challenge to the statute lacks merit, and the CCA's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

3. Strickland's ineffective assistance of appellate counsel (IAC) claim lacks merit.

Strickland suggest that, if the Court concludes for some reason that it cannot consider the overbreadth and vagueness arguments, it should find that his appellate counsel was ineffective for not presenting them on direct appeal. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). To establish ineffective assistance of counsel, a petitioner must show "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different." *Awde v. Davis*, 2020 WL 3913563, at *3 (N.D. Tex. July 10, 2020) (citing *Strickland*, 466 U.S. at 688). This standard also applies to claims alleging ineffective assistance by appellate counsel. *Blanton v. Quarterman*, 543 F.2d 230, 240 (5th Cir. 2008). The petitioner must show that (1) his appellate counsel's performance was objectively unreasonable and (2) there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal. If the

petitioner makes an insufficient showing on either component, the court need not address the other. *Strickland*, 466 U.S. at 697.

IAC claims are mixed questions of law and fact and are accordingly analyzed under the "unreasonable application" standard of Section 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When, as was the case here, the CCA has adjudicated the IAC claim on the merits, the petitioner must overcome the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In such cases, the question for this Court is not "whether defense counsel's performance fell below *Strickland's* standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Here, Strickland fails to show that his counsel's decision not to argue overbreadth and vagueness on direct appeal prejudiced him because he has not shown a reasonable probability that those arguments would have been successful on appeal. As discussed above, the overbreadth and vagueness claims lack merit, or, at the least, the CCA could have reasonably come to that conclusion.

Because the CCA's rejection of Strickland's appellate IAC claim was not an unreasonable application of *Strickland*, the claim lacks merit and should be denied.

### Recommendation

For these reasons, the Court should DENY Strickland's federal habeas petition.

Signed October 28, 2022.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)